THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROOSEVELT WILLIE JOHNSON, Defendant-Appellant.

(No. 55163; ▮▮▮▮▮▮▮▮▮▮▮)

First District—March 8, 1972.

Sam Adam and Edward M. Genson, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and George Pappas, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Roosevelt Willie Johnson, was charged by complaint with aggravated assault in that he fired a "12 gauge shot gun or rifle" at two members of the Chicago Police Department and thereby placed them in reasonable apprehension of receiving a battery in violation of Section 12—2(a) (1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 12—2(a) (1)). In a trial without a jury, the defendant was found guilty as charged and sentenced to serve six months in the House of Correction.

On appeal, it is contended that (1) the defendant did not receive a

fair trial because the trial judge reached a conclusive opinion of his guilt prior to the close of all the evidence, (2) he was not proved guilty beyond a reasonable doubt, (3) he received ineffective assistance of counsel, (4) he was denied his right to an adequate hearing in mitigation, and (5) the sentence imposed was excessive.

In view of the conclusions reached, we need only consider the first contention which is dispositive of this appeal. According to the evidence presented at trial by the State the defendant was detained by the police in front of his home for a traffic violation. When informed that he would have to go to the police station to post bond, he ran into his home and started yelling at the police from a window on the second floor. The defendant then returned to the front of the building and fired a gun. The police returned the gunfire, and the defendant ran back into the premises. The police then searched the building and found the defendant inside sleeping in a room with a recently fired shotgun next to his bed.

The defendant took the stand in his own defense and denied firing any shots at the police. He further stated that the shotgun, found by the police, was given to him several days before the incident by his brother-in-law and that the weapon was broken and inoperative. The defendant's wife, Patricia Johnson, took the stand and as part of her corroborative testimony stated that the police came to the door after the shooting had stopped. At this point the Court inquired, "Was that before or after the shotgun was fired?" and she responded, "This was after the shooting." Near the end of her testimony on direct examination the following exchange occurred:

Q. "They [police] searched the house?

A. Yes. They walked into the bedroom and looked at my husband sitting on the bed, walked back out.

Mr. Williams [Assistant State's Attorney]: I object to this.

Mr. Feldman [Defense Counsel]: All right. You may cross-examine.

The Court: There will be a finding of guilty.

Mr. Feldman: Judge, I have another witness here who states that the man never fired this gun. The gun has never been fired.

The Court: Put him on."

William Porter, the defendant's father-in-law was then called as a defense witness. He testified that he saw the defendant enter the apartment on the night in question and that he did not see his son-in-law with a gun.

The principal issue of fact presented in this case was whether the defendant fired shots at the policemen. A police officer testified that the defendant fired a gun and that they found him "in the room sleeping

with a shotgun next to his bed." The defendant denied firing any shots and stated that the shotgun, found near him, was broken at the time of the incident. During the course of the direct examination of the second witness for the defense, the Court posed the following question: "Was that before or after the shotgun was fired?" It is urged by the State that the Court in asking this question was making a legitimate attempt to obtain the defendant's version of the facts. We are not in accord and believe that it is implicit from the reference to the discharge of the shotgun the Court assumed that the shotgun had, in fact, been fired and that the defendant was guilty of the offense. The implication that the trial judge had reached a conclusion concerning defendant's guilt prior to the presentation of all the evidence was made more explicit when after the direct examination of the defendant's wife, the trial judge made a finding before the close of all the evidence.

The State argues that the premature finding does not reflect bias, prejudice, or the existence of a preconceived notion that the defendant was guilty. It is urged that "What transpired in the case at bar is illustrative of a harmless situation when the prosecution presents its evidence, the defense responds with several witnesses and then the court makes a finding based upon the mistaken belief that all the evidence has been presented." We are not in accord. The record does not provide a basis to conclude that the trial judge reasonably believed that all the evidence had been presented when he made his first finding. At that point, the direct examination of a defense witness had just been completed, and the trial judge did not even wait for the prosecutor to proceed with cross-examination, for the defense to rest, or for final argument to be made.

██ An accused in a criminal proceeding is presumed innocent, and this presumption continues through all stages of a trial. (*People v. Long,* 407 Ill. 210, 95 N.E.2d 461.) The court in a bench trial has the duty of hearing, weighing, and evaluating the evidence; but no matter how strong a case is presented by the State, it is fundamental that the court should resolve disputed issues of fact only after hearing all of the evidence with an open mind. (*People v. Ojeda,* 110 Ill.App.2d 480, 249 N.E.2d 671.) It is apparent from the Court's precipitous dispatch of the trial in the case at bar that after hearing the testimony of the police officer, the trial judge concluded that the defendant was guilty and that further evidence would serve no purpose. The totality of the circumstances presented compels us to conclude that this defendant has not had a fair and impartial trial which is the inherent right of every person accused of a crime.

Other errors are assigned, but in view of our conclusion that the defendant did not receive a fair trial, we do not deem it necessary to pass on them.

The judgment of the Circuit Court is therefore reversed, and this cause is remanded to that Court for a new trial.

Reversed and remanded.

DIERINGER, P. J., and ADESKO, J., concur.